UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| JOSEPH COLEMAN | * | CIVIL ACTION |
| | * | |
| VERSUS | * | NO. 10-1977 |
| | * | |
| OMEGA PROTEIN, INC. | * | SECTION "L" (4) |
| | * | |

**FINDINGS OF FACT & CONCLUSIONS OF LAW**

**I. BACKGROUND AND PROCEDURAL HISTORY**

This case arises out of injuries Plaintiff Joseph Coleman allegedly sustained on April 19, 2010. Plaintiff avers that on that day, he was employed as a seaman by Defendant Omega Protein, Inc. onboard the F/V MISSISSIPPI SOUND, a vessel owned and operated by Defendant. Plaintiff alleges that on the day in question, he passed out while returning from the restroom on the vessel, hitting his head and landing onto the floor. Plaintiff states that as a result, he suffered serious injuries.

In July 2010, Plaintiff filed suit in this Court under the Jones Act and general maritime law, seeking to recover damages for the alleged negligence of Defendant and the alleged unseaworthiness of the vessel, as well as maintenance and cure. In its answer, Defendant denied liability. With respect to Plaintiff's maintenance and cure claim, Defendant specifically asserted the affirmative defense of willful misconduct, alleging that Plaintiff's injuries were caused by his use of illegal drugs.

In March 2011, the Court granted Defendant's motion for partial summary judgment and dismissed Plaintiff's Jones Act and unseaworthiness claims. The Court found that Plaintiff had failed to put forward a theory of negligence and a theory of unseaworthiness. As a result, the

1

only claim remaining in this case concerns Plaintiff's right to maintenance and cure. This claim came on for trial before the Court without a jury on August 25, 2011.

The Court has carefully considered the testimony of all of the witnesses, the exhibits entered into evidence during the trial, as well as the record. Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, the Court hereby enters the following findings of fact and conclusions of law. To the extent that any findings of fact may be construed as conclusions of law, the Court hereby adopts them as such. To the extent that any conclusions of law constitute findings of fact, the Court adopts them as such.

## II. FINDINGS OF FACT

1. Plaintiff is an adult citizen of the State of Mississippi.
2. Defendant is a corporation organized under the laws of the Virginia, doing business in the Louisiana.
3. Defendant owned and operated the F/V MISSISSIPPI SOUND, a commercial fishing vessel.
4. Defendant employed the Plaintiff as a member of the crew of the F/V MISSISSIPPI SOUND.
5. Plaintiff has worked off and on for Defendant (previously known as "Zapata Haynie" and "Zapata Protein") for approximately twenty-six years. Plaintiff was employed for half of the 2009 fishing season and returned for the 2010 fishing season. During this period, Plaintiff worked in service of the F/V MISSISSIPPI SOUND.
6. On the first day of the 2010 fishing season, April 19, 2010, Plaintiff woke from his sleep to use the restroom between 2:00 a.m. and 3:00 a.m. After using the restroom, Plaintiff

was returning to his room when he began to feel dizzy and then passed out in the hallway. The restroom is approximately ten to twelve feet from his bunk room. Plaintiff testified that he hit the threshold of the doorway and then the floor, lacerating his left eye and nose.

7. Immediately following the incident, Defendant took Plaintiff to Escatawpa Family Clinic where he was seen by Dr. Calvin Ennis, who treated the lacerations to his left eye and nose. At the Escatawpa Family Clinic, Ms. Annita Jones obtained a urine sample at 11:25 a.m. for the purpose of a post-accident drug test of Plaintiff. While the post-accident drug test results were pending, Dr. Ennis initially diagnosed Plaintiff with "syncope, perhaps related to urination" but wanted to rule out any cardiac or metabolic causes.

8. Dr. Ennis administered a cardiogram, obtained a CT scan of Plaintiff's brain, and fitted him with a Holter monitor in an attempt to determine the cause of Plaintiff's passing out. None of Dr. Ennis' tests revealed what caused Plaintiff to pass out. The post-accident drug screen revealed that Plaintiff tested positive for cocaine.

9. Dr. William George, Defendant's expert pharmacologist and a toxicologist, testified that the positive test for cocaine/metabolite at 288 ng/ml indicates Plaintiff's use of cocaine within approximately 24-48 hours prior to the April 19, 2010, accident. Dr. George found that the level of benzoylecgonine, the primary metabolite of cocaine, in Plaintiff's drug sample was nearly twice the level generally required for confirmation of cocaine use. Plaintiff took and passed an earlier drug test for cocaine during his pre-employment physical on April 13, 2010. Therefore, Dr. George concluded that the April 19, 2010, positive drug test indicated that Plaintiff used cocaine sometime after the April 13, 2010,

|    |    |
|---|---|
|    | drug screen performed in connection with his pre-employment physical. Dr. George opined that the use of cocaine was the cause of Plaintiff's fall. |
| 10. | Plaintiff denies taking cocaine prior to his April 19, 2010, accident. However, Dr. George testified that Plaintiff's denial of using cocaine during the 2-3 day period prior to the accident is not consistent with the known toxicokinetics of cocaine, which has a short half-life. Although Plaintiff denies ever taking drugs, the credible evidence indicates that he has done so. In addition, at trial, Plaintiff denied taking cocaine since the accident. At his February 10, 2010, deposition, however, Plaintiff admitted taking cocaine approximately two to three weeks before the deposition. In light of Plaintiff's inconsistent statements regarding his drug use, as well as his testimony and appearance at trial, the Court finds that his testimony lacks credibility. The credible evidence is that Plaintiff consumed cocaine 24-48 hours before the drug test and that the Plaintiff's use of cocaine at that time was intentional. |
| 11. | Furthermore, because all of Dr. Ennis' non-drug tests came back negative in determining the cause of Plaintiff's accident, Dr. Ennis testified that the cocaine use was the probable cause of Plaintiff passing out. Syncope, or lightheadedness, is reported to be a common effect of cocaine use. Dr. Ennis explained the mechanism thusly: "It [cocaine] can reduce your heart rate. If your heart rate goes down, then the oxygen level in your brain goes down, and that can induce syncope. That's probably the mechanism that would make the most sense to me." As a result, the Court finds that the Plaintiff's syncope was caused by his cocaine use. |

**III. CONCLUSIONS OF LAW**

1. The Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1333, which confers on the federal district courts original jurisdiction over admiralty and maritime claims. Venue is proper because the Court has personal jurisdiction over Omega Protein, Inc. *See* 28 U.S.C. § 1391(b), (c).

2. A seaman injured during the course and scope of his employment has a claim for maintenance and cure. "Maintenance and cure is an ancient duty imposed upon a shipowner to provide for a seamen who becomes ill or injured during his service to the ship." *Aguilar v. Standard Oil Co. of New Jersey*, 318 U.S. 724, 730 (1943). This duty is implied in maritime employment contracts between seamen and employers and is required regardless of whether the shipowner's negligence caused the injury. *See id.*

3. In *Aguilar*, the Supreme Court made it clear that duties under maintenance and cure are broad and that a shipowner's defenses to such a claim are limited and narrowly applied. *See Aguilar*, 318 U.S. at 730-31. "So broad is the shipowner's obligation that negligence or acts short of culpable misconduct on the seaman's part" will not terminate the duty. *Id.* Only willful misconduct, defined as "willful misbehavior or [a] deliberate act of indiscretion," is sufficient to constitute an affirmative defense of the shipowner to the maintenance and cure obligation. *Id.*

4. Historically, willful misconduct has been found in instances involving venereal disease. In an 1853 maintenance and cure case, the court explained, "A sailor is not entitled to be treated on shipboard at the expense of the ship, not to wages, whilst disabled by disease brought on by his own vices." *Chandler v. The ANNIE BUCKMAN*, 5 F. Cas. 449 (S.D.N.Y. 1853). More recent cases affirm this conclusion, as in *Bynum v. Premier*

*Cruise Lines, Ltd., Inc.,* 1994 A.M.C. 2185 (M.D.Fla.), in which a seaman diagnosed with HIV was denied maintenance and cure after the plaintiff admitted that he had contracted the illness through sexual activity with several partners prior to boarding the ship.

5. Courts have also held that injuries received as a result of intoxication arose out of willful misconduct. *See, e.g.*, *Des Jardins v. Foss Maritime Co.*, 1993 A.M.C. 2233 (W.D.Wash.); *Blouin v. American Export Isbrandtsen Lines, Inc.*, 319 F. Supp. 1150 (S.D.N.Y. 1970); *Smith v. Isthmian Lines, Inc.*, 205 F. Supp. 954 (N.D.Cal. 1962).

6. Recently, the Fifth Circuit has extended this conclusion to include illegal drug use, *Silmon v . Can Do II, Inc.*, 89 F.3d 240, 243 (5th Cir. 1996), and a district court has found that the use of cocaine in particular constitutes willful misconduct. *Napier v. F/V Deesie*, 360 F. Supp. 2d 195, 201 (D.Mass. 2005). In *Silmon*, the Fifth Circuit further explained that it is irrelevant if the drug use occurred prior to boarding the ship. *See Silmon*, 89 F.3d at 242 (noting that a sailor is not entitled to maintenance and cure "when he, being in a diseased state, ships as an able man, the master and owners being ignorant of his condition" (quoting *Chandler*, 5 F. Cas. 449 (S.D.N.Y. 1853))).

7. The Court finds that Plaintiff intentionally used cocaine 24-48 hours before the incident and that his fall and resulting injuries were caused by the use of cocaine. In light of the evidence and case law, the Court concludes that Plaintiff engaged in willful misconduct, and that this willful misconduct caused the injuries at issue. Accordingly, Defendant is not obligated to pay maintenance and cure.[1]

---

[1] Plaintiff has argued that he is entitled to the costs of rehabilitating his back and neck pain allegedly caused by the accident. Defendant counters that Plaintiff's injuries are the result of prior incidents, and that Plaintiff has reached maximum medical improvement from any aggravation the April 19, 2010, fall may have caused to his previous injuries. Because the Court

**IV. SUMMARY**

Based on the above findings of fact and conclusions of law, the Court concludes that Plaintiff is not entitled to maintenance and cure. Plaintiff's maintenance and cure claim is hereby **DISMISSED** with prejudice and costs.

New Orleans, Louisiana, this 8th day of September, 2011.

*[signature]*
_____
UNITED STATES DISTRICT JUDGE

---

has found that Plaintiff's cocaine use constitutes willful misconduct, it need not reach this issue.